OPINION OF THE COURT
Howard A. Zeller, J.
Third-party defendant Ann L. Middleton moves pursuant to CPLR 3211 (subd [a], par 7) to dismiss the third-party complaints of third-party plaintiffs Norman and Lillian Horton, and the Village of Nichols, for failure to state a cause of action.
Third-party defendant Ann L. Middleton avers that on February 23, 1979 she drove her three-year-old daughter Darlene to the home of her babysitter, Lillian Horton; Mrs. Middleton and Darlene got out of the car and walked toward the Horton house; Darlene suffers from juvenile rheumatoid arthritis and has some trouble walking; Mrs. *597 Middleton remembered that she had left some medication for Darlene in the car, and returned to the car to get it; as Mrs. Middleton walked back to Darlene she saw her daughter slip and fall on a patch of ice on the Hortons’ sidewalk.
Mrs. Middleton’s husband, J. Darryl Middleton, has commenced an action individually and as the guardian of Darlene A. Middleton against the Village of Nichols and Norman Horton and Lillian Horton, seeking damages for injuries sustained in Darlene’s alleged fall. Norman and Lillian Horton have commenced a third-party action against Fred G. Eccleston for negligently installing the sidewalk, and also against Mrs. Middleton; the complaint alleges Darlene’s injuries were caused by the negligence of Mrs. Middleton in caring for her daughter, and contribution is sought from Mrs. Middleton in the event the Hortons are found liable in the main action. The Village of Nichols also has commenced a third-party action against Mrs. Middleton. This complaint similarly alleges that Darlene’s injuries were caused in whole or part by the negligent care of Mrs. Middleton, and contribution is sought.
The general rule in New York is that a minor child has no cause of action against his parent for negligent supervision, and a negligent parent is not subject to a third party’s claim for apportionment of responsibility (Holodook v Spencer, 36 NY2d 35). This rule has been justified by a number of policy considerations: the prevention of family discord; the need to preserve a family’s resources for the aid of all members; a fear that uninsured parents might not assert their children’s rights if they are subject to liability; a fear that one estranged parent on behalf of the child might sue the other parent for negligent supervision, and abuse the claim as a retaliatory device; the difficulty of placing bounds on the extent of the right to supervise; and a desire to give parents the widest discretion possible in supervising their children (Holodook v Spencer, supra, pp 45-51).
The validity of these considerations was examined and rejected by Judge Jasen, dissenting, who asked “what logic can there be for a rule that denies the negligent driver recourse against the parent whose responsibility for the *598 child’s injuries may be greater?” (Holodook v Spencer, supra, p 52.) Judge Gabrielli has expanded upon this point, that a “third party may have only been a minor cause of the damage, and under Dole apportionment principles he would be entitled to seek contribution from the parent. This he cannot do if there is no direct liability from the parent to the child. The result is a penalty against a marginally negligent tort-feasor while the parent is not responsible for any of the loss. In fact, in situations such as the instant case, the parent may even receive substantial economic gains as a result of the lawsuit.” (Nolechek v Gesuale, 46 NY2d 332, 344 [concurring].) The basis for the Holodook rule has been criticized by numerous commentators (McCurdy, Torts Between Persons in Domestic Relation, 43 Hary L Rev 1030, 1078-1080; Thuillez, Parental Nonsupervision: The Tort that Never Was, 40 Albany L Rev 336; Casenote, 42 Brooklyn L Rev 125; Note, 47 U Col L Rev 795). Judge Fuchsberg has called upon the court to “toss out” the Holodook rule and return to “the broad question at the heart of negligence law: What would an ordinarily reasonable and prudent person — taking into account the parent-child relationship — have done in similar circumstances?” (Nolechek v Gesuale, supra, pp 345, 346 [concurring].) This “reasonable parent” standard has been used in California (Gibson v Gibson, 3 Cal 3d 914, 921-922) and its general adoption has been recently proposed (Hollister, Parent-Child Immunity: A Doctrine in Search of Justification, 50 Fordham L Rev 489, 525-527, see pp 516-524 criticizing Holodook generally). However, the majority of the Court of Appeals has not adopted this standard and Holodook remains the law in- New York.
In Nolechek v Gesuale (supra), the Court of Appeals established an important exception to the Holodook rule. If a parent entrusts an infant with a dangerous instrumentality (a motorcycle in Nolechek) he creates a danger to society. If a third party is injured the parent has breached not a duty to the child (since under Holodook none exists), but a duty to prevent harm to the third party, caused by the child (Nolechek v Gesuale, 46 NY2d 332, 339, 341, supra). The court noted the “sound rule of the Holodook case survives only if accompanied by sound exceptions” (supra, p.341).
*599 The Hortons argue that another exception should be recognized in the case at bar. In their brief their counsel writes: “Here we have an infant of very tender years who has a severe disability. Although the burden on her parents simply because of her disability is a significant one, they should be responsible for protecting others and have an exception to the Holodook rule such as exists in the case of dangerous instrumentalities”. The recognition of such an exception would swallow the rule. Under Holodook a parent has no duty to protect a third party from legal liability for injuries to his child. Nolechek’s exception for dangerous instrumentalities is based upon a duty to third parties to protect them from direct harm, not from legal consequences of harm to the child. No direct harm to the Hortons has been alleged and no exception is warranted.
The Village of Nichols argues “a duty was owed to the world in general, to prevent exposure of third parties to possible tort liability exposure.” The idea of a “universal duty of care” was rejected by the Court of Appeals in Palsgraf v Long Is. R. R. Co. (248 NY 339 [Cardozo, Ch. J.]) and the “relational negligence” theory was adopted instead (see Prosser, Palsgraf Revisited, 52 Mich L Rev 1; the “universal duty” theory is explained in the Palsgraf dissent of Andrews, J., 248 NY 339, 350, supra). Further, as noted earlier, there is no duty by a parent to protect a third party from the legal consequences of injury to his child. Such a rule would effectively nullify Holodook.
The Hortons next argue that their third-party action is viable against the derivative claim of Mr. Middleton, for loss of services and medical expenses. However, the Hortons’ third-party complaint only states causes of action against Fred G. Eccleston and Mrs. Middleton. No cause of action is asserted against Mr. Middleton, and he has made no motion to dismiss any claim against him.
More importantly, any claim against Mr. Middleton based upon the negligence of him or his wife would fail to state a cause of action. The essence of the Holodook rule is that Mr. and Mrs. Middleton had no duty to reasonably care for their daughter. They could not have been negligent as a matter of law. The Holodook rule eliminates any question about contributory negligence or indemnification; *600 since there is no duty there is no negligence, and where there is no negligence there cannot be a recovery.
The motion of third-party defendant Ann L. Middleton for summary judgment dismissing the third-party complaints of Norman and Lillian Horton and the Village of Nichols is granted.